UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SENATE MAJORITY PAC,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>Defendant. | Civil Action No. 26-cv-336 (BAH)<br><br>Judge Beryl A. Howell |

# MEMORANDUM OPINION

Plaintiff Senate Majority PAC ("SMP"), an independent expenditure-only committee registered with the Federal Election Commission ("FEC"), colloquially known as a "Super PAC," with a singular mission to elect Democrats to the United States Senate, Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 10-11, ECF. No. 1, seeks to compel defendant FEC to adjudicate its administrative complaint, filed over one year ago, against intervenor-defendant, National Republican Senatorial Committee ("NRSC"), a national political party committee that supports Republican Senate candidates, *id.* ¶ 14. The FEC's failure to act on this administrative complaint, which was filed 176 days before the filing of this lawsuit, is, according to plaintiff, contrary to law under Section 30109(a)(8)(A) of the Federal Elections Commission Act ("FECA"). *Id.* ¶¶ 43-46; *see* 52 U.S.C. § 30109(a)(8)(A). For its part, the FEC has alerted the Court that the agency is without a four-commissioner quorum and thus "without the authority to litigate this matter." Def.'s Resp. to Mot. to Intervene ¶ 2, ECF No. 18; *see also* Def.'s Notice of Lack of Quorum, ECF No. 9. With the FEC not participating in this litigation, the NRSC, as intervenor-defendant, now moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6), on grounds that the Court lacks subject matter jurisdiction and that plaintiff fails to state

a claim. *See* Intervenor-Def.'s Mem. Supp. Mot. to Dismiss ("Intervenor-Def.'s Mem.") at 8-9, ECF No. 22. For the reasons explained below, NRSC's motion to dismiss is granted.

## I. BACKGROUND

A review of the statutory and regulatory background underlying plaintiff's claim is below, followed by a summary of the factual and procedural history of this case.

### A. Statutory and Regulatory Background

Congress enacted the FECA in 1971 "with the aim of 'remedy[ing] any actual or perceived corruption of the political process.'" *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 784 (D.C. Cir. 2022) (quoting *FEC v. Akins*, 524 U.S. 11, 14 (1998)). Under FECA, the FEC is the "regulatory agency of the United States government" tasked with "the administration, interpretation, and civil enforcement of the [FECA]." *Giffords v. FEC*, No. 25-5188, --- F.4th ----, 2026 WL 2618706, at *1 (D.C. Cir. Sept. 4, 2026) (citing 52 U.S.C. §§ 30101-46). Its bipartisan structure requires that "[n]o more than 3 members of the Commission . . . may be affiliated with the same political party," 52 U.S.C. § 30106(a)(1), and "the affirmative vote of 4 members of the Commission shall be required," *id.* § 30106(c), for the Commission "to initiate," "defend," "or appeal any civil action in the name of the Commission," *id.* § 30107(a)(6); "to render advisory opinions," *id.* § 30107(a)(7); "to make, amend, and repeal . . . rules," *id.* § 30107(a)(8); "to conduct investigations and hearings," *id.* § 30107(a)(9); or as particularly relevant here, to "make an investigation of [an] alleged violation" and take further steps to enforce alleged violations of the FECA, *id.* § 30109(a).

The FECA's enforcement provisions provide that "[a]ny person" may file an administrative complaint alleging "a violation of th[e] Act." *Id.* § 30109(a)(1). Within five days of receipt of a complaint, "the Commission shall notify, in writing, any person alleged in the complaint to have

committed such a violation," and the named individuals then have an opportunity to respond to the allegations within fifteen days. *Id.* At that point, the FEC's quorum requirements become relevant: Upon "determin[ing], *by an affirmative vote of 4 of its members*, that it has reason to believe that a person has committed, or is about to commit, a violation of this Act," the FEC shall provide further notice to the respondent and "make an investigation" of the alleged violation. *Id.* § 30109(a)(2) (emphasis added). That four-member consensus continues to be a prerequisite for subsequent enforcement actions, including the determination "that there is probable cause to believe" the alleged violation occurred, *id.* § 30109(a)(4)(A)(i), the decision whether to "enter into a conciliation agreement" with the respondent, *id.*, the determination that an apparent "knowing and willful" violation of the FECA should be referred "to the Attorney General of the United States," *id.* § 30109(a)(5)(C), and the decision to "institute a civil action for relief" in federal court, *id.* § 30109(a)(6)(A).

The enforcement provisions further provide that "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party . . . , or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with" this Court against the FEC. *Id.* § 30109(a)(8)(A). Upon determining that the "the dismissal of the complaint or the failure to act is contrary to law," the Court "may declare" as much and "direct the Commission to conform with such declaration within 30 days." *Id.* § 30109(a)(8)(C). Failure by the FEC to comply with the Court's declaration provides the complainant with authority to file in its own name "a civil action to remedy the violation involved in the original complaint." *Id.*

**B. Factual Background**

Plaintiff availed itself of the FECA's enforcement provisions by filing an administrative complaint with the FEC, on August 13, 2025, alleging that the NRSC violated the FECA's contribution limits by impermissibly using funds from its "specialty accounts" to pay for candidate television advertisements. Compl. ¶¶ 1, 3-4; *see also* Administrative Compl., ECF No. 1-1. The FECA generally limits national party committees, such as the NRSC, to raising $44,300 per year in contributions from any single donor, Compl. ¶ 3 (citing 52 U.S.C. § 30116(a)(1)(B); FEC, Price Index Adjustments for Contribution & Expenditure Limitations, 90 Fed. R. 8526, 8528 (Jan. 30, 2025) (inflation adjustment)), but Congress amended the FECA in 2014 to permit national party committees to raise funds up to three times the regular contribution limit for certain "separate, segregated" accounts, 52 U.S.C. § 30116(a)(1)(B), (9)(A)-(C); Compl. ¶ 3. Those "specialty accounts . . . may be used 'solely to defray expenses incurred with respect to . . . headquarters buildings of the party' or with respect to 'the preparation for and conduct of election recounts and contests and other legal proceedings.'" Compl. ¶ 3 (emphasis omitted) (quoting 52 U.S.C. § 30116(a)(9)).

According to plaintiff, the NRSC evaded these limits by creating three "joint fundraising" committees, Compl. ¶ 22 (citing 52 U.S.C. § 30102(e)(3)(A)(ii); 11 C.F.R. § 102.17), to raise money jointly for "the NRSC's specialty accounts" and for "the Senate campaign committee of the Republican nominee for Senate" in Michigan, Nevada, and Wisconsin, *id.* ¶¶ 4, 26. Those joint fundraising committees "raised millions of dollars that were designated for the NRSC's specialty accounts" but "spent substantially all [those] funds," including "at least 4.8 million dollars in specialty account funds," on "multiple television advertisements that are materially indistinguishable from typical candidate advertisements." *Id.* ¶¶ 27, 31. While classified as

"operating expenses"—*i.e.*, part of the "fundraising expenses . . . incurred for the purposes of raising funds for the" Senate campaign committees and for the NRSC—plaintiff contends that the advertisement expenses "were not legitimate fundraising expenses" because "only $8,174" of the millions of dollars raised were ultimately transferred to the NRSC's specialty accounts. *Id.* ¶¶ 32-33. Instead, plaintiff asserts that by using "donations to specialty accounts to finance candidate television advertisements," the NRSC "evade[d] the restrictions on the use of specialty account funds . . . under the pretext of fundraising." *Id.* ¶¶ 34, 36. Those actions also allegedly "deprived [plaintiff] and the public of accurate information about the amount of funding that [the NRSC] ha[d] available in its various accounts" because the joint fundraising committees did not report the allocation of funds among their members until after those funds were disbursed, which, in the 2024 election cycle, took place after the general election. *Id.* ¶ 38.

Plaintiff asserts that, not only has the NRSC "done nothing" since the 2024 elections "to disclaim its use of sham [joint fundraising committees] or to suggest that it will not engage in the same practice as the 2026 election heats up," but the NRSC "is already running at least one campaign advertisement in connection with the 2026 Senate election in Texas that is paid for by a joint fundraising committee that includes the NRSC's specialty accounts." *Id.* ¶ 40. Thus, "[i]f the FEC does not act on [plaintiff's] [administrative] complaint, the NRSC will continue to use this unlawful maneuver in the 2026 election cycle, compounding [plaintiff's] and the public's informational injury." *Id.*

Upon receipt of plaintiff's administrative complaint, the FEC notified the NRSC, by letter dated August 28, 2025, of the complaint indicating that the NRSC "may have violated" the FECA and giving the NRSC fifteen days to "demonstrate in writing that no action should be taken against [it]." Intervenor-Def.'s Mem., Ex. 1, FEC Notification Letter at 1, ECF No. 22-1. The FEC,

however, has been without a four-commissioner quorum since April 2025, four months before plaintiff filed its administrative complaint. *See* Def.'s Notice of Lack of Quorum ¶ 2. While the presidential nominations of two new commissioners have been pending before Congress since February 2026, *see id.* ¶ 3, the FEC remains unable to take further enforcement actions requiring "an affirmative vote of 4 of its members," 52 U.S.C. § 30109(a).

**C. Procedural History**

Plaintiff filed this lawsuit on February 5, 2026, challenging the FEC's failure to "take[] any action on [its] [administrative] complaint in the 176 days since [plaintiff] filed it" as violating the enforcement provisions of the FECA. Compl. ¶ 2 (citing 52 U.S.C. § 30109(a)(8)(A)). In its prayer for relief, plaintiff requests a declaration that "the FEC's failure to act on [its] administrative complaint was contrary to law under 52 U.S.C. § 30109(a)(8)(A)" and an order for "the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C)." Compl. at 12. In response, on April 6, 2026, the FEC filed a notice of a lack of quorum, explaining the agency lacks "authority to litigate the merits of plaintiff's Complaint," Def.'s Notice of Lack of Quorum ¶ 4, followed the next day, by the NRSC filing a motion to intervene, *see* Intervenor-Def.'s Mot. to Intervene, ECF No. 10.

In response to an order from the Court directing plaintiff to indicate, in light of the FEC's lack of quorum, "how plaintiff would like to proceed to avoid indefinite pendency of this litigation," Min. Order (Apr. 7, 2026), plaintiff filed a status report and affidavit for default, arguing that default should be entered against the FEC, under Federal Rule of Civil Procedure 55(a), for failing to "plead or otherwise defend" against this action and that "[a]ny disputes about Plaintiff's entitlement to the relief it seeks can properly be adjudicated in connection with" the NRSC's motion to dismiss and plaintiff's forthcoming motion for default judgment. Pl.'s Status Report,

ECF No. 15; *see also* Pl.'s Aff. For Default, ECF No. 16. The FEC, pursuant to Court order, responded to the NRSC's motion to intervene, indicating that the agency "takes no position" due to the lack of quorum. Def.'s Resp. to Mot. to Intervene ¶ 2.[1] The NRSC was permitted to intervene, *see* Min. Order (Apr. 13, 2026), and filed the pending motion to dismiss, which plaintiff opposes and is now ripe for the Court's review, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 23; Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply"), ECF No. 24.

## II. LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by the Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); Fed. R. Civ. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue, "including establishing the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). When reviewing such a motion, the court must "assume that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016), "accept the well-pleaded factual allegations as true," and "draw all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio*, 797 F.3d at 19). Courts "do not assume the truth of

[1] Given that the FEC filed a notice of lack of quorum and reiterated the same circumstance in the agency's Court-ordered response to the NRSC's motion to intervene, *see* Def.'s Notice of Lack of Quorum; Def.'s Resp. to Mot. to Intervene, and thus has entered an appearance, the Clerk of Court properly declined plaintiff's request to enter default against defendant, *cf. End Citizens United PAC v. FEC*, 69 F.4th 916, 919 (D.C. Cir. 2023) (noting proper entry of default where the defendant "*failed to enter an appearance* or otherwise defend the lawsuit" (emphasis supplied)).

legal conclusions," however, so "threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice." *Id.* at 865-66 (alterations adopted) (quoting *Arpaio*, 797 F.3d at 19). The court may also "consider materials outside the pleadings to determine [its] jurisdiction." *Id.* at 856 n.7; *see also West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017) ("As necessary, [a court may] cull additional facts from other parts of the record." (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005))).

## III. DISCUSSION

Before considering the merits of whether the FEC's lack of action on plaintiff's administrative complaint was "contrary to law" under 52 U.S.C. § 30109(a)(8)(C), "we must, as always, assure ourselves of our jurisdiction, including Article III standing." *Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*, No. 26-5123, -- F.4th ---, 2026 WL 2276494, at *12 (D.C. Cir. Aug. 7, 2026); *see also Am. First Legal Found. v. Greer*, 153 F.4th 1311, 1314 (D.C. Cir. 2025) ("[W]e must consider whether [plaintiff] satisfied the requirements for Article III standing, a question bearing on whether the . . . court ha[s] subject-matter jurisdiction."). At the motion to dismiss stage, the question is whether the complaint "state[s] a plausible claim that the plaintiff has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y of the United States v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015); *see Lujan*, 504 U.S. at 561 (observing that each element of standing must be proven "with the manner and degree of evidence required at the successive stages of litigation"). When answering that question, "[a court] may consider materials outside the pleadings" and "test the asserted theory of injury, causation, and redressability at the factual, evidentiary level." *Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir. 2024) (first quoting *Kareem*, 986 F.3d at 866 n.7; then quoting *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987)).

The NRSC argues that plaintiff fails to meet the applicable burden of plausibly alleging both the injury-in-fact and redressability requirements of standing. *See* Intervenor-Def.'s Mem. at 1-2. While the participating parties spill substantial ink debating whether plaintiff adequately pleaded an informational or competitive injury, *see* Intervenor-Def.'s Mem. at 10-19; Pl.'s Opp'n at 7-15; Def.'s Reply at 2-9, the redressability concerns prove dispositive.

"To determine whether an injury is redressable, [courts] consider the relationship between the judicial relief requested and the injury suffered." *Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (internal quotation marks omitted) (quoting *California v. Texas*, 593 U.S. 659, 671 (2021)). Where, as here, a plaintiff's "asserted injury stems from the government's allegedly unlawful . . . lack of regulation[] of someone else, the . . . redressability prong[] of standing analysis require[s] more exacting scrutiny." *Johnson v. Becerra*, 111 F.4th 1237, 1248 (D.C. Cir. 2024) (quoting *Freedom Republicans, Inc. v. FEC*, 13 F.3d 412, 416 (D.C. Cir. 1994)). Plaintiff seeks relief under the FECA provision that "'permits a private party to challenge the FEC's decision *not* to enforce' the [FECA] and its attendant regulations," *Nader v. FEC*, 725 F.3d 226, 228 (D.C. Cir. 2013) (emphasis in original) (quoting *Chamber of Com. of U.S. v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995)), and thus plaintiff "brought suit not against the [NRSC], which is the direct source of its alleged injury, but against the FEC," *Freedom Republicans, Inc.*, 13 F.3d at 416. This makes meeting the minimum requirements of Article III standing "substantially more difficult." *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 44-45 (1976)). No matter the source of the harm, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal citation and quotation marks omitted).

Here, plaintiff requests declaratory and injunctive relief compelling the FEC to conform with a declaration that its "failure to act is contrary to law." Compl. ¶ 2. As for injury, plaintiff

asserts "an informational injury because it had an inaccurate impression of the NRSC's fundraising and expenditures" when the NRSC used joint fundraising committees to channel funds raised for its specialty accounts to television advertisements, *id.* ¶ 39, that its injury will continue "for yet another election cycle" absent further enforcement action from the FEC, *id.* ¶ 40, and that it suffers "a competitive harm" from the NRSC's alleged "unlawful use of funds," *id.* ¶ 14; *see also id.* ¶¶ 41-42. Given the FEC's lack of quorum and corresponding inability to take further enforcement action, plaintiff cannot meet its burden to show that a favorable ruling is likely to redress its alleged injuries.

"[R]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (emphasis in original) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment)); *see also Coal. for Humane Immigrant Rts. v. Mullin*, No. 25-5289, --- F.4th ----, 2026 WL 2317908, at *6 (D.C. Cir. Aug. 11, 2026) (same). Unlike in other matters where "[a] court *could*" require government actors to exercise their duty to regulate third parties, *see Murthy*, 603 U.S. at 73 (emphasis in original), the FEC is "not authorized to [take the further enforcement action] requested by plaintiff[] when it could not possibly . . . secure[] affirmative votes from four Commissioners—which are required to take such an action," and "the Court would certainly not compel it to do so," *McCutcheon v. FEC*, 496 F. Supp. 3d 318, 334 (D.D.C. 2020). Indeed, a court order "compel[ling] the FEC to contravene its statutory requirements" and continue the enforcement process "with fewer than four affirmative votes would impermissibly 'produce an absurd . . . result which Congress could not have intended.'" *Id.* at 333 (quoting *Clinton v. New York*, 524 U.S. 417, 429 (1998)); *see also New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688

(2010) (noting that Congress may "easily" alter quorum requirements, but "until it does," those requirements "must be given practical effect rather than swept aside" during the "admittedly difficult circumstances" posed by vacancies).

The plaintiff in another contrary-to-law case against the FEC, pursuant to 52 U.S.C. § 30109(a)(8)(A), narrowly avoided this redressability problem because, although "[t]he FEC was without a quorum" and "unable to take action on enforcement matters" for most of the pendency of the litigation, it "finally obtained a quorum" before the court ruled on that plaintiff's motion for default judgment. *Campaign Legal Ctr. v. FEC*, No. 20-cv-0809 (ABJ), 2021 WL 12356071, at *2 (D.D.C. Mar. 11, 2021) (internal citations and quotation marks omitted). There, the court observed that "for the bulk of the time this case was pending, it was not at all clear that the Court could provide relief" because "[t]here is no clear authority indicating whether the Court had the power to order the agency to act under those circumstances." *Id.* at *2 & n.3 (noting that the Supreme Court declined to resolve and the D.C. Circuit has not addressed the issue). Even the Supreme Court has recognized the dubious prospect, presented here, of compelling agency action contrary to the agency's quorum requirements. In *Arizona v. Inter Tribal Council of Arizona, Inc.*, the Supreme Court observed that a State's forthcoming request to the Election Assistance Commission ("EAC") for alteration of an agency form could encounter difficulties because the EAC "currently lacks a quorum" and may "prove[] unable to act on a renewed request." 570 U.S. 1, 19 & n.10 (2013). In that circumstance, the State "would be free to seek a writ of mandamus to 'compel agency action unlawfully withheld or unreasonably delayed,'" *id.* at 19 n.10 (quoting 5 U.S.C. § 706(1)), but the mandamus court's ability to grant that relief was an open question. Indeed, the Supreme Court deemed it "a nice point, which we need not resolve here, whether a

court can compel agency action that the agency itself, for lack of the statutorily required quorum, is incapable of taking." *Id.*

The FEC's ongoing lack of quorum makes inescapable the redressability question for the claim asserted in this matter. Since the next step in the enforcement process requires "an affirmative vote of 4 of [the FEC's] members" to find "reason to believe" a violation has occurred, 52 U.S.C. § 30109(a)(2), and the FEC cannot possibly muster an affirmative vote of four members with only two current commissioners, plaintiff's requested declaratory and injunctive relief is not "likely" to address its alleged injuries, *Lujan*, 504 U.S. at 561.[2]

To be sure, the D.C. Circuit has held that "[w]hen a contrary-to-law decision arises from the Commission's failure to act on a complaint at all, the Commission conforms by holding a reason-to-believe vote, regardless of the vote's outcome." *Campaign Legal Ctr. v. 45Committee, Inc.*, 118 F.4th 378, 390 (D.C. Cir. 2024). The question in that case, however, was whether holding a reason-to-believe vote constitutes conforming action under 52 U.S.C. § 30109(a)(8)(C) if it results in a deadlock—*e.g.*, a 3-3 vote outcome—rather than a majority-supported decision to pursue an investigation or dismiss an administrative complaint. *See id.* at 389-90. The Court did not consider the present circumstances, where not even a possibility of a majority-supported outcome is present because fewer than four commissioners are able to cast a vote. *See id.* at 391-92 (noting that "a reason-to-believe vote that fails 3-3 or 0-6, or one that succeeds 4-2 or 5-1, are all equivalent," without considering outcomes of votes with fewer than four commissioners).

[2] While a grant of declaratory relief alone—*i.e.*, a declaration "that the FEC's failure to act on Plaintiff's administrative complaint was contrary to law," Compl. at 12—would not require the Court to compel what is likely *ultra vires* action by the FEC, declaratory relief "cannot alone supply jurisdiction otherwise absent" as it "would allow a federal court to issue what would amount to 'an advisory opinion without the possibility of any judicial relief,'" *California v. Texas*, 593 U.S. 659, 673 (2021) (quoting *Los Angeles v. Lyons*, 461 U. S. 95, 129 (1983) (Marshall, J., dissenting)); *see also Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 120 (2025) ("The primary goals of [Article III's redressability] requirement are to ensure that plaintiffs do not sue the wrong parties and that courts do not issue advisory opinions.").

Moreover, the Court's rationale was that "FECA entitles [a plaintiff], through a contrary-to-law action, to compel the Commission's engagement with the merits of her administrative complaint through such a vote," *id.*, but the FEC cannot render any decisions as to its "duties and powers" without "a majority" of its members, 52 U.S.C. § 30106(c), and the agency's internal directives indicate that the four-commissioner quorum is required even "for the *consideration* . . . of matters that involve the exercise of its duties and powers under [FECA]," FEC Directive 10, § B (June 8, 1978 amend. Dec. 20, 2007), available at https://www.fec.gov/resources/cms-content/documents/directive_10.pdf (emphasis added). Thus, while even if technically within the Court's power to compel the FEC to conduct a reason-to-believe vote by its current two commissioners, *see Haaland*, 599 U.S. at 294, such a vote would be doomed to fail and would not constitute the FEC's genuine engagement with the merits of plaintiff's administrative complaint, so the Court "cannot grant any *effectual* relief," *Mehneh v. Rubio*, 164 F.4th 928, 930 (D.C. Cir. 2026) (emphasis added).[3]

Absent plausible allegations establishing plaintiff's standing, the Court "therefore lack[s] jurisdiction to reach the merits of the dispute," *Murthy*, 603 U.S. at 56, and grants the NRSC's motion to dismiss under Rule 12(b)(1). Since resolution of a Rule 12(b)(6) motion "presents a ruling on the merits with res judicata effect," *Haase*, 835 F.2d at 906, the NRSC's alternative arguments that plaintiff failed to state a claim for relief need not be addressed.

---

[3] In *Campaign Legal Ctr. v. 45Committee, Inc.*, the D.C. Circuit held that "FECA's judicial-review requirements—including the citizen-suit preconditions—are nonjurisdictional." 118 F.4th at 386. Thus, rather than pre-judging the appropriateness of exercising jurisdiction over any future citizen suit, dismissal of the instant contrary-to-law suit merely determines plaintiff's ability to bring a claim against the FEC for failure to act under 52 U.S.C. § 30109(a)(8)(A)'s limited cause of action. *See id.* at 388, 392.

## IV. CONCLUSION

For the foregoing reasons, intervenor-defendant NRSC's motion to dismiss is granted and plaintiff's complaint is dismissed without prejudice. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: September 15, 2026

**BERYL A. HOWELL**
United States District Judge